In re **MIDWEST MILK MONOPO-LIZATION LITIGATION.**

**Robert B. ALEXANDER et al.,**
Plaintiffs,

v.

**NATIONAL FARMERS ORGANI-ZATION et al., Defendants.**

No. 19191–1.

United States District Court,
W. D. Missouri, W. D.

May 23, 1973.

On Motion to Produce June 28, 1973.

Supplemental Opinion and Order
July 31, 1973.

John C. Gage and Major W. Park, Jr., Gage, Tucker, Hodges, Kreamer, Kelly & Varner, Harry P. Thomson, Jr., and Geo. E. Leonard, Shughart, Thomson & Kilroy, Kansas City, Mo., for Robert B. Alexander and others, plus Mid-America Dairymen, Inc., a cooperative Corp.

Wm. H. Sanders and David Trowbridge, Blackwell, Sanders, Matheny, Weary & Lombardi, Worth Rowley, Rowley & Scott, Robert H. Kapp, David B. Lytle, and Gail Starling Marshall, Washington D. C., Robert T. Cochran, Nashville, Tenn., for N. F. O. and individuals.

J. L. Parks, Winston, Strawn, Smith & Patterson, Chicago, Ill., Robert A. Goodman, Kansas City, Mo., for Beatrice Foods Co. and Boswell Dairies Co.

John C. Chernauskas, Gen. Counsel, Dept. of Agriculture, Washington D. C., for Earl Butz, Secretary of U. S. Dept. of Agriculture.

Richard F. Mitchell, Atty. Tax. Div., Dept. of Justice, Washington, D. C., for Johnnie Walters, Comm. I. R. S.

Colvin A. Peterson, Jr., Watson, Ess, Marshall & Enggas, David R. Hardy, Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, Mo., Melville C. Williams, Kall B. Kennedy, Pope, Ballard, Kennedy, Shepard & Fowle, Martin F. Burns, Chicago, Ill., Stuart H. Russell, Oklahoma City, Okl., and Sidney Harris, Arent, Fox, Kintner, Plotkin & Kahn, Washington D. C., for Associated Milk Producers, Inc., Associated Reserve Standby Pool, a cooperative corp., and Wesley J. Johnson, Gary Hanman, Harold S. Nelson and David Parr.

Sidney C. Berde, Berde, Leonard & Weinblatt, St. Paul, Minn., Thomas J. Wheatley and Wm. M. Stapleton, Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, Mo., for Central Milk Producers Cooperative.

## MEMORANDUM AND ORDER DIRECTING FURTHER PROCEEDINGS IN REGARD TO MOTION FOR ORDER COMPELLING DISCOVERY

JOHN W. OLIVER, District Judge.

Numerous parties in the above case requested production of various documents pursuant to Rule 34 of the Rules of Civil Procedure. The Secretary of the Department of Agriculture has refused to comply with the requests. Nor has he sought any protective order pursuant to Rule 26(c) of the Rules of Civil Procedure. Rather, the Secretary has filed what is labeled an "opposition" to the pending motion. That opposition is based upon three grounds, none of which are sufficient to support the Secretary's position.

The first two grounds are based generally on the notion that the parties should be precluded from participating in further discovery until this Court has ruled the Secretary's pending alternative motion to dismiss, or in the alternative,

for summary judgment. The Secretary properly recognizes that the first two grounds of his motion involve matters of discretion, a discretion which, as the Secretary properly points out, should not be exercised lightly. We are convinced that the circumstances of this case require that, in the exercise of our discretion, we reach the Secretary's third ground of objection in order that future difficulties in processing this case be avoided.

## II.

■ The Secretary's motion states as its third ground that the "plaintiffs cannot obtain the internal communications and memoranda containing *suggestions, recommendations,* and *opinions.*" Point II of the Secretary's suggestions is devoted to that question. Those suggestions reveal that some unidentified person made "a document-by-document review of the material sought in the request for production [and that] all material and documents were made available which did not reveal *decision-making deliberations, internal suggestions* and *recommendations.*" Those suggestions explained that "when a page contained a mixture of *facts, opinions,* and *suggestions,* that portion of the page which revealed the *internal suggestions, recommendations,* and *opinions* was blocked out, and copies were provided of the factual parts of the pages." It is not apparent, however, who the individual exercising that judgment may have been.

At other places in the Secretary's suggestions in support still different language is used to implicitly describe an apparent anticipated assertion of some sort of an executive privilege. For example, page 3 of the supporting suggestions states that "the Secretary does, however, oppose the production of the documents containing *thought processes, recommendations, suggestions,* and *opinions* of his subordinates . . ."
And on page 7 of the Secretary's suggestions it is contended that no court

may properly require production of the "*internal thought processes, memoranda, etc.,* containing *suggestions* and *recommendations* to the Secretary.*" Even broader language—"*internal memoranda, work papers, opinions, suggestions,* and *recommendations*—is used on page 10 of the Secretary's suggestions. None of the language used in either the Secretary's opposition or his suggestions reflect the standards or criteria, if any, under which the blocking out of portions of the documents was done.

The files and records in this case show that, after some reluctance, the Secretary produced for our *in camera* inspection approximately 345 (rather than approximately 300) pages of various documents. Our detailed examination reveals that less than 200 of the 345 pages have any material blocked out at all. Why the block out may have been on a particular page is unexplained. Nor is there any explanation of why 41 separate documents, the numerous pages of which contain no cropping whatsoever, were not produced.

But, more importantly, there is no attempt to make any showing whatever as to why the particular sentence or sentences on the approximately 200 pages which were blocked out may properly be considered to be within the asserted privilege. To compound the confusion, neither the Secretary nor counsel representing him have attempted to claim any privilege of any kind, stating somewhat cryptically that "a formal claim of privilege may be made at an appropriate time."

The affidavit attached to the Secretary's motion to dismiss has been reviewed to determine whether or not it could fairly be said that the Secretary may have revealed any intention in regard to whether he might or might not assert some sort of an executive privilege. Nothing is expressly stated in Mr. Halnon's affidavit in that regard. Indeed, that affidavit is replete with statements that the investigations made by

various Market Administrators were made, not for the purpose of formulating any matters of policy, but simply for the purpose of ascertaining, for example, whether "NFO was *in fact* marketing milk" (p. 5), and whether "NFO was *in fact* performing such services" (p. 6). Statements to the effect that "the investigations by the various Market Administrators involved revealed that NFO was *in fact* actually marketing milk of its members under one or more of the above conditions" may strongly suggest that the Secretary and various officials in the Department were not engaged in the establishment of any policy or in the performance of any decision-making function at all; but that, rather, the clear tenor of the affidavit may strongly suggest that the purpose of the various investigations was simply to ascertain whether, under the factual circumstances developed, already established policies were to be applied. At any rate, neither the affidavit filed in support of the Secretary's motion to dismiss nor any other paper filed by him or by counsel attempts properly to claim or support any privilege recognized by law.

### III.

In spite of the fact the Secretary is, as a practical matter, pursuing a course of action under which unilateral judgment has been exercised in regard to the existence and scope of an unclaimed privilege, it would not be proper for this Court to rule a claim of privilege which has not, and which may not be claimed in accordance with applicable law. Indeed, we must judicially assume, until something to the contrary affirmatively appears, that the somewhat confused state of the record results from the Secretary's recognition that privileges similar to one which may be invoked in this case are limited in nature; that they must be invoked by formal claim; that, in light of the delicate question of confrontation which may be presented, such a privilege may not be claimed except

after the careful personal consideration of a responsible executive official; and that, under any and all circumstances, such privileges accordingly are "not to be lightly invoked." United States v. Reynolds, 345 U.S. 1 at 7, 73 S.Ct. 528, 97 L.Ed. 727 (1953).

We therefore deem it necessary to direct further appropriate proceedings in order that the questions which may be presented be put in proper focus. We believe a statement of our view of the cases which we would be required to apply in the event a formal claim of privilege should be invoked may be helpful under the circumstances. We, of course, share Chief Justice Marshall's hope, as quoted in footnote 18 on page 7 of 345 U.S., 73 S.Ct. 528, reporting United States v. Reynolds. But we cannot ignore the explicit command of *Reynolds* that "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers" (345 U.S. at 9–10, 73 S.Ct. at 533). We hope that what we shall say in regard to the applicable law may enable the parties to agree upon procedures which will avoid the presentation of what has been recognized as a delicate question since the time John Marshall was Chief Justice.

### IV.

The point of beginning is Rule 34 of the Rules of Civil Procedure which requires production of all matters within the scope of Rule 26(b). Rule 26(b) permits discovery "regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action." That rule further provides that "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Our *in camera* review of the documents produced by the Secretary establishes that, almost without exception, all of those documents should have been

produced in accordance with the rule unless protected by some privilege.

Rule 509, relating to Secrets of State and Other Official Information, of the Proposed Rules of Evidence, reflects a codification of the rules of decision announced in the better reasoned cases cited by the parties in support and in opposition to the pending motion. Rule 509(b) states the general rule as follows:

> General rule of privilege. The government has a privilege to refuse to give evidence and to prevent any person from giving evidence upon a showing of reasonable likelihood of danger that the evidence will disclose a secret of state or official information, as defined in this rule.

Proposed Rule 509(a) properly recognizes and defines the distinction between a "secret of state" and "official information." The Secretary presumably could not under any circumstance claim that the documents relate "to the national defense or the international relations of the United States," within the definition of Proposed Rule 509(a)(1).

The Secretary apparently takes the position that "official information" is involved in the sense that the documents, in fact, constitute "intragovernmental opinions or recommendations submitted for consideration in the performance of decisional or policy making functions," within the definition codified in Proposed Rule 509(a)(2)(A).

Proposed Rule 509(c) outlines the procedures under which the privilege may be claimed and how the question should be presented for judicial consideration and determination. The procedures which have thus far been directed in this case are in general compliance with the procedures contemplated under Proposed Rule 509(c) with one important exception. That exception relates to the fact that neither the Secretary, as the chief officer of the government agency involved, nor any attorney representing the government has yet properly claimed any privilege.

Our order directing further proceedings will anticipate that, should the Secretary conclude that a claim of privilege should, under all the circumstances, be asserted, he, or the responsible attorney representing the Secretary, will be required to do so in writing and in accordance with that portion of Rule 509(c) which provides that "The required showing may be made in whole or in part in the form of a written statement."

The parties are also advised that in the event a proper claim and showing is made at some future time, the Court will direct further proceedings which will afford all counsel opposing the claim and showing to be heard in accordance with the procedures outlined in Proposed Rule 509(c). The questions presented will, of course, be determined in accordance with existing rules of decision in light of the fact that the Proposed Rules of Evidence are not yet effective. We believe counsel are entitled to our view of what the cases hold.

### V.

As we have indicated, we do not believe that Proposed Rule 509 does much, if anything, more than codify the existing rules of decision. United States v. Reynolds, *supra,* involved the quite narrow question of whether the Secretary of the Air Force should be required to produce the official accident investigation report and the statements of three surviving crew members of a crash of a plane which was "engaged in a highly secret mission." The Judge Advocate General represented to the trial court that the demanded material could not be furnished "without seriously hampering national security, flying safety, and the development of highly technical and secret military equipment."

The Air Force agreed to produce the three surviving crew members for depositional testimony and to permit them to refresh their memories from any writ-

ten statements made. Those witnesses were not, of course, to be permitted to testify about a matter of a "classified nature."

The Supreme Court treated the case as one involving a privilege not to reveal a "military secret." It pointed out that all parties conceded the existence of a limited privilege which protects "military and state secrets." The importance of the case was the Court's firm rejection of the notion that "the executive department heads have power to withhold any documents in their custody from judicial view if they deem it to be in the public interest." The Court noted that an attempt to maintain such a position involved a question which had "constitutional overtones" and therefore sought a more narrow ground for decision.

Avoidance of constitutional conflict was possible under the rule announced which required the Air Force to satisfy the trial court, from all of the circumstances of the case, that there was, in fact, "a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." The rule provides that when and if such a showing is made "the occasion for the privilege is appropriate, and the court should not jeopardize the security which the privilege is meant to protect."

■ *Reynolds,* on its facts, involved "a military plane which had gone aloft to test secret electronic equipment." Under the circumstances, and in light of the showing made, the privilege was recognized. But the Court enunciated the rule that "in each case, the showing of necessity which is made will determine how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate." Each case, we believe, obviously must turn on its own facts; a blanket executive privilege is simply unknown to American law.

The willingness of the Air Force in the *Reynolds* case, consistent with Chief Justice Marshall's admonition in the *Aaron Burr* trial, to make available everything except "matters of a classified nature" enabled the trial court to avoid the delicate confrontation between the executive and judicial branches which would have otherwise been presented. The government has, so far as we know, quite consistently followed a pattern similar to that followed in the *Reynolds* case.

In 1965, for example, this Court had substantially the same question presented as was presented in *Reynolds* in the case of Britton et al. v. Maytag Aircraft Corp., No. 14389-1. That case presented the question of whether the Air Force's investigation and statement of witnesses in regard to the crash of a supersonic aircraft in Bermuda should be produced. Although the question of privilege was discussed at pretrial, the necessity for any claim of privilege was avoided by this Court's approval of the agreement of counsel that all Air Force documents would be revealed to counsel for the private parties and be made available at the time of the examination of all Air Force witnesses in order that counsel could make certain that a particular witness' recollection had in fact been accurately refreshed by his prior written statement.

Counsel in the *Britton* case also agreed that all depositions would be written up in a manner which would avoid direct quotations from the Air Force records but which would accurately reflect the precise language from those records in the event a particular witness testified that his recollection had in fact been refreshed by his review of his past recorded statement. This Court approved the agreement of counsel in the *Britton* case not only because that agreement mooted the lurking constitutional confrontation but because it reflected the government's commendable recognition that cases should be determined on the basis of fact and the ad-

ministration of justice is truly a search for truth.

Kaiser Aluminum & Chemical Corp. v. United States, 141 Ct.Cl. 38, 157 F.Supp. 939 (1958), is the leading case cited in the Advisory Committee's Notes to Proposed Rule 509(a)(2)(A). Mr. Justice Reed (Retired), who, as an active member of the Supreme Court participated in the decision of *Reynolds,* wrote the opinion in that case while sitting on the Court of Claims by assignment. The request in *Kaiser* centered upon internal GSA data which related directly to intra-office advice on the sale of particular surplus property to Reynolds Aluminum Company rather than to Kaiser. The particular memorandum involved was written by a Special Assistant to the War Assets Liquidator. On the facts, that memorandum was "the kind that every head of an agency or department must rely upon for aid in determining a course of action or as a summary of an assistant's research."

Mr. Justice Reed made clear in *Kaiser* that *Reynolds* involved a type of executive privilege different in kind from what Proposed Rule 509 broadly classifies as "official information." He also made clear that any executive privilege, regardless of its nature, is recognized in law "for the benefit of the public, not of executives who may happen to then hold office." *Kaiser* concluded that the fact that a privilege is judicially recognized under the factual circumstances of a particular case "is not to say that every file of government papers is closed to discovery." Kaiser was followed and applied by the Fifth Circuit in Davis v. Braswell Motor Freight Lines, Inc., (5th Cir., 1966) 363 F.2d 600, another case cited in the Advisory Committee's Notes to the same subsection of Proposed Rule 509.

Ackerly v. Ley, (1969) 137 U.S.App. D.C. 133, 420 F.2d 1336, another case cited in support of the Proposed Rule 509(a)(2)(A), reversed a district court for failing to follow proper procedures in its consideration of whether or not the Commissioner of Food and Drugs was required to disclose particular documents under the Freedom of Information Act enacted by the Congress, effective June 5, 1967, 5 U.S.C. § 552. The exemptions contained in that Act are similar in substance to the privilege codified in Proposed Rule 509(a)(2)(C).

Ackerly v. Ley appropriately stated that courts have "been dealing with this problem since long before the Freedom of Information Act was passed" and that "they can bring to the administration of the exemptions of that statute the same common sense by which they have had to measure claims of executive privilege." That case was remanded to the district court for it to determine whether or not the overly broad claim made by the Commissioner did in fact involve "internal working papers in which opinions are expressed and policies formulated and recommended." The parties apparently followed the Court of Appeals' admonition to apply common sense in their reappraisal of their problem on remand because the books contain no future report of the case.

Both sides cite Freeman v. Seligson, (1968) 132 U.S.App.D.C. 56, 405 F.2d 1326. That case reiterates the long-standing judicial recommendation that procedures be adopted in the trial court which avoid a "showdown" on the delicate question which may be presented. The Court of Appeals did not look with favor on the "almost certain, laborious, page-by-page examination which assertions of privilege will require, certainly of the Secretary, and perhaps also of the court." (The cases cited with approval in footnote 65 (on page 1339 of 405 F.2d) of *Freeman* cite the cases which establish the *in camera* inspection procedures codified in Proposed Rule 509(c).) Reference to those cases is also helpful in that they make clear that the Supreme Court's teaching in *Reynolds* that "judicial control over the evidence in a case

cannot be abdicated to the caprice of executive officers" is to be applied in a rational and realistic manner.

Boeing Airplane Company v. Coggeshall, (1960) 108 U.S.App.D.C. 106, 280 F.2d 654 (cited in footnote 65 of *Freeman* and also cited in the Advisory Committee's Note to Proposed Rule 509), for example, made clear that "factual and investigatory reports" are not within any privilege and that before any privilege may be recognized it must be shown by the government that the documents for which privilege is claimed did in fact deal with "recommendations as to policies . . . or recommendations as to decisions which should be reached."

Westinghouse Electric Corp. v, City of Burlington, Vt., (Ct.App., D.C., 1965) 351 F.2d 762, also cited in footnote 65, related to the Department of Justice's refusal to produce documents in its possession relevant to the trial of the private treble damage antitrust cases which followed in the wake of criminal convictions in the electrical industry. That case reversed a trial judge who had improperly recognized a blanket privilege. The case was remanded with the familiar admonition that the trial judge explore, among other things, "the possibility of reaching an accommodation between the parties and the Department of Justice."

Under the circumstances, we think it clear that the Secretary be afforded a reasonable opportunity to give appropriate consideration to the delicate question of whether or not he wishes to claim the privilege and to thereafter attempt to make the written showing required by law before such a privilege may be judicially recognized. We believe it is also clear that under the applicable rules of decision this Court is under duty to afford the parties an appropriate opportunity fully to explore any and all proper procedures under which any apparent conflicting interests may be accommodated in the interest of justice.

In connection with the latter matter, however, we are convinced that it is unrealistic to assume that any progress may be made in that connection without the presence of responsible counsel vested with full authority to state the position of and to take action on the Secretary's behalf.

The order which we enter in that connection, of course, is not to be considered as any reflection upon John H. Sandor, Esq., or any other government counsel who have represented the Secretary in connection with this litigation. The problem is simply a matter of direct communication. Our order merely reflects our experience in other matters in which responsible government counsel have been requested to come from Washington under similar circumstances.

For the reasons stated, it is

Ordered that on or before Thursday, June 7, 1973, the responsible counsel for the Secretary, designated by him as such, shall prepare, serve, and file an appropriate response to this order in which he shall state:

(a) That, after appropriate consultation with the Secretary, he is authorized to state the position of and to take definitive action on behalf of the Secretary in connection with all proceedings which may be directed in connection with the pending motion to produce.

(b) Whether the Secretary has authorized him to appear at a conference with the Court and all parties who have an interest in the production of documents in connection with this case or in connection with cases which pend as a part of JPMDL Docket No. 83, the purpose of which would be to explore procedures under which the interests of the government and of all parties may be accommodated under some appropriate procedure agreeable to all concerned.

(c) In the event the Secretary determines that he does not wish to be

afforded an opportunity to explore the possibility of reaching any accommodation of the interests of the government and that of all parties under the circumstances, the Secretary's response shall, in that event, definitively state whether or not the Secretary claims that his present refusal to produce any and all portions of all the *in camera* documents is pursuant to some privilege recognized by law. If a claim of privilege is made, the Secretary or his responsible attorney shall prepare, serve, and file a separate written statement in which he shall make what is deemed to be an appropriate showing in regard to how and why each of the documents presently withheld, and all portions of such documents which have been blocked out, are in fact and in law within the scope of the claimed privilege.

It is further

Ordered that this case be set for further appropriate proceedings at 9:30 o'clock a. m., on Thursday, June 14, 1973. In the event the Secretary's response is in the affirmative in regard to the exploration of the possibilities of accommodation, appropriate attention will be devoted to that subject. In the event of negative response by the Secretary in that regard, the Court will proceed to conduct an appropriate hearing in connection with the Secretary's claim of privilege and written statement above required, generally in accordance with the procedures codified in Proposed Rule 509(c).

It is therefore further

Ordered that the responsible attorney identified by the Secretary in paragraph (a) of the Secretary's response to this order shall personally appear on behalf of the Secretary at the proceedings to be held on June 14, 1973.

## ON MOTION TO PRODUCE

Pursuant to direction made at pretrial conference on June 14, 1973, the Secretary of Agriculture telegraphed the Court as follows:

FM Harland F Leathers Chief, General Litigation Sect, Civil Div, DOJ WashDC

To John W. Oliver Judge, United States District Court Western District of Missouri Kansas City Mo

. . . . . .

Re: Midwest Milk Monopolization Litigation JPMDL No. 83 Department of Agriculture Advises That It Has Determined Not to Assert Executive Privilege at This Time. Accordingly, We Stand By Our Position Expressed to the Court at the June 14 Hearing. We Understand Should an Order be Entered Granting the Motion to Produce, Currently Pending, the Court Will Allow Reasonable Time for the Solicitor General to Determine Whether to Request the Court to Issue a Statement Pursuant to 28 U.S. C. 1292 or in the Alternative for the Secretary to Formally Assert Executive Privilege.

The files and records show that no valid ground for denying the motion to produce has been presented. Accordingly, it is

Ordered that the pending motion to produce should be and the same is hereby granted. It is further

Ordered that execution of this order be stayed for a period of ten (10) days within which the Secretary may seek appellate review or make a final claim and showing of executive privilege in accordance with law.

## SUPPLEMENTAL MEMORANDUM AND ORDER

On May 23, 1973, in our Memorandum and Order filed that day, we stated the procedural status in regard to the Secretary of the Department of Agriculture's refusal to produce documents pursuant to Rule 34 of the Rules of Civil Procedure. On page 5 thereof we stated that we shared Chief Justice Marshall's hope,

to which reference was made by Chief Justice Vinson in United States v. Reynolds, 345 U.S. 1, page 7, footnote 18, 73 S.Ct. 528, page 532, 97 L.Ed. 727 (1952), that the question of ordering production of documents in the possession of the executive branch "presents a delicate question, the discussion of which, it is hoped, will never be rendered necessary in this country."

We also stated in our Memorandum and Order of May 23, 1973 that we could not, on the other hand, ignore the explicit command of *Reynolds* that "[j]udicial control over the evidence in a case can not be abdicated to the caprice of executive officers" [345 U.S. at 9–10, 73 S.Ct. at 533].

In what may be described as an extended opinion, we stated our view on May 23, 1973 in regard to what we believed to be the applicable law in the hope that what was said might "enable the parties to agree upon procedures which will avoid the presentation of what has been recognized as a delicate question since John Marshall was Chief Justice."

Because recent developments avoid what may have been a direct constitutional confrontation between judicial and executive power, it is unnecessary to detail the circumstances which required this Court to enter its order of June 28, 1973 granting the motion to produce. Because we still entertained a hope for solution, we directed that execution of our order of June 28, 1973 be stayed for a period of ten days within which the Secretary was given an opportunity either to seek appropriate appellate review or to make a proper final claim and appropriate showing of executive privilege in accordance with law.

That period of grace expired without action on the part of the Secretary. We deemed it proper, however, not to direct further proceedings in light of the fact a further pretrial conference was sched-uled to be held on July 18, 1973. At that pretrial, for reasons which need not be detailed, we concluded that still an additional ten day period of grace should be granted.

On July 28, 1973, we received a letter dated July 26, 1973, from John A. Sandor, Esq., attorney in the Office of the General Counsel of the Department of Agriculture, in which he advised that "a decision had been made not to pursue the document production issue by way of an appeal" and that the documents presented *in camera* "will be produced without deletions."

The last paragraph of Mr. Sandor's letter stated:

> In view of these developments the Department expects additional requests for a great number of documents by the various parties to the consolidated discovery. Such documents will also be produced. It is to be noted, however, that all documents which are protected as confidential pursuant to section 7 U.S.C. 608d of the Agricultural Marketing Agreement Act of 1937, as amended, will not be produced unless releases are provided by the applicable parties. As you are aware this is the agreed procedure that was followed in the production of documents heretofore.

On July 30, 1973, Mr. Sandor, by telegram, identified the section 608d documents as "Weekly reports from the . . . Market Administrator . . . which are statutorily confidential . . . under the Agricultural Marketing Agreement Act in that particular handlers may not have given appropriate releases on confidentiality."

In order to avoid any possible misunderstanding, we telephoned Mr. Sandor and were advised that it was agreeable that all undeleted documents heretofore presented to the Court *in camera* could now be delivered to opposing counsel except the Weekly Reports from the Mar-

ket Administrators. In regard to the latter documents, Mr. Sandor suggested that they would again be reviewed and that delivery would be made with the minimum deletions necessary under the circumstances.

Our Order, therefore, shall direct delivery of Packet No. 2 containing all documents produced without deletions as presented to the Court in connection with the May 1973 pretrial conference. We shall also direct delivery of all documents recently forwarded in File Nos. 1B, 2B, 3B, 4B, 5B, 6B, 7B, 8B, 9B (Part 1), 9B (Part 2), and 9B (Part 3), except the Weekly Reports from the marketing administrators.

The latter reports will be held *in camera* pending discussion between counsel for the parties requesting production and with Mr. Sandor. Hopefully, they will be able to agree on procedures in regard to this relatively small number of documents.

For the reasons stated, it is

Ordered (1) that Packet No. 2 containing the documents produced *in camera* without deletions in connection with the May 1973 pretrial conference should be and will promptly be delivered to counsel requesting production. It is further

Ordered (2) that all documents without deletions recently forwarded by registered mail as File Nos. 1B, 2B, 3B, 4B, 5B, 6B, 7B, 8B, 9B (Part 1), 9B (Part 2), and 9B (Part 3), shall also be delivered to counsel requesting production except the Weekly Reports of the marketing administrators. It is further

Ordered (3) that counsel for the parties requesting production and Mr. Sandor, as counsel for the Department of Agriculture, shall promptly confer and present an agreed order as to what further proceedings should be directed in connection with the Weekly Reports. It is further

Ordered (4) that the files and records of this Court should show that the Court

is grateful for the efforts of the parties and their counsel in finding an appropriate method under which the delicate questions presented have been resolved.