UNITED STATES of America, Plaintiff-Appellant,

v.

LEGGETT & PLATT, INC., Defendant-Appellee.

No. 75–1719.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 19, 1975.

Decided Sept. 29, 1976.

---

1. *See Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

William T. Plesec, Anti-Trust Div., Dept. of Justice, Cleveland, Ohio, Thomas E. Kauper, Howard E. Shapiro, Chief App. Section, Dept. of Justice, Washington, D. C., Robert J. Wiggers, Donald I. Baker, Washington, D. C., Barry Grossman, Atty., Antitrust Div., Dept. of Justice, for plaintiff-appellant.

Murray S. Monroe, John R. Phillips, Cincinnati, Ohio, for defendant-appellee.

Before EDWARDS and PECK, Circuit Judges, and CECIL, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

On May 15, 1971, the government filed the instant civil antitrust action against defendant-appellee Leggett and Platt ("LP") to require LP to divest itself of the March 31, 1968 stock acquisition of Detroit-based Motor City Spring Company and the January 2, 1969, assets acquisition of Cincinnati-based J. R. Greeno Company. On January 3, 1975, LP filed amended requests for the government to produce certain documents, including documents relating to the government's investigations, no more than one culminating in litigation, of other innersprings and box springs manufacturers' acquisitions of other springs manufacturers.[1] Over government objections of relevancy, work product, and governmental privilege, the district court ordered the government to produce the requested documents, except work products of the government's investigation of LP and of "other open investigations." The court, in denying the government's motion for reconsideration, elucidated its reasoning.

"A work product privilege has a terminal point. When a case has ended or when an investigation is closed a work product privilege terminates. . . ." 19 Fed. Rules Serv.2d 1370, 1372, 1975 Trade Cas. § 60,220.

The court, in rejecting the governmental privilege claim, found no "clear" or "accepted" privilege applicable, then purported to apply a "traditional weighing and balancing of interests" test, apparently finding LP's interest in "information" it "deems essential" sufficient to overcome "the government's interest in preserving the privacy of its internal consultative and deliberative process, thereby encouraging 'open, frank discussion between subordinate and chief concerning administrative action.'" The government failed to comply with the production order, and the district court thereafter dismissed the government's complaint without prejudice.

On appeal of the dismissal, the government argues that the district court improperly ordered production of irrelevant and privileged documents, such error thereby invalidating the dismissal. Because the district court made no explicit determination of relevance and failed to properly apply the government privilege doctrine, and because we view the work product doctrine as protecting work products of closed investigations, we vacate the dismissal and remand to the district court for further proceedings.

The Federal Rules of Civil Procedure (F.R.C.P.) authorize "extremely broad," C. Wright, Law of Federal Courts § 81 at 355 (2d ed. 1970), discovery. Unless the requested documents are either irrelevant or privileged, F.R.C.P. 26(b)(1), LP was entitled to their production.

---

1. The discovery rules apply to the government, as a party, just as to any party, though certain privileges, such as governmental privilege, may be available only to the government. *United States v. Procter & Gamble Co.,* 356 U.S. 677, 681, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958); *Amchem Products, Inc. v. GAF Corp.,* 64 F.R.D. 550, 553 (N.D.Ga.1974); Moore's Federal Practice § 26.61[2] (1976); Wright & Miller, Federal Practice & Procedure § 2019 (1970).

■ That the government failed to prosecute civil antitrust actions to divest other industry acquisitions is in and of itself irrelevant because LP's purported defense of "discriminatory enforcement" is, as a matter of law, no defense. The government "alone is empowered to develop that enforcement policy best calculated to achieve the ends contemplated by Congress and to allocate its available funds and personnel in such a way as to execute its policy efficiently and economically." *Moog Industries, Inc. v. FTC,* 355 U.S. 411, 413, 78 S.Ct. 377, 379, 2 L.Ed.2d 370 (1958). Accord, *FTC v. Universal-Rundle Corp.,* 387 U.S. 244, 87 S.Ct. 1622, 18 L.Ed.2d 749 (1967); *Kixmiller v. SEC,* 160 U.S.App.D.C. 375, 492 F.2d 641, 645 (1974); *United States v. Hunter,* 459 F.2d 205, 220–221 (4th Cir.), *cert. denied,* 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972); *L. G. Balfour Co. v. FTC,* 442 F.2d 1, 2 (7th Cir.1971); *Robins & Weill, Inc. v. United States,* 63 F.R.D. 73 (M.D.N.C.1974). There is no allegation that the proceedings against LP stem from racial or religious animosity, see, e. g., *Oyler v. Boles,* 368 U.S. 448, 454–456, 82 S.Ct. 501, 505–506, 7 L.Ed.2d 446 (1962); *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *United States v. Swanson,* 509 F.2d 1205, 1208–1209 (8th Cir.1975), or from a desire to punish LP for exercising its constitutional rights, see, e. g., *United States v. Berrios,* 501 F.2d 1207 (2d Cir.1974), *United States v. Falk,* 479 F.2d 616 (7th Cir.1973) (en banc).

Yet investigatory inquiries into other industry acquisitions are relevant, and thereby discoverable unless privileged, to the extent they contain factual materials, such as surveys and economic analyses of the industry, and the government analyses. The government's reply brief admits their relevancy.[2] Because the district court failed to explicitly determine the relevancy of the requested documents, the district court on remand should determine the relevancy in light of the above criteria.

For documents containing relevant material, the district court should then consider the applicability of government privilege and work product doctrine.

■ The district court properly applied a balancing test in determining whether LP could pierce the qualified governmental official information privilege[3] to obtain the investigatory files.[4] But the court erred in finding that LP's subjective need, its "deem[ing]" the documents "essential," overrode the government interest in secrecy. To override the government interest in secrecy the court must find that LP's objective, rather than its subjective, need for the documents overrides the governmental interest in secrecy. See, e. g., *Sun Oil Co. v. United States,* 514 F.2d 1020 (Ct.Cl.1975); *EEOC v. St. Francis Community Hosp.,* 21

---

**2.** "The United States does not claim that any factual materials relating to the substance of this case are irrelevant. Items containing substantive information have been included in this appeal only if they are protected by the work product exemption or governmental privilege. . . ." *Government Reply Brief 7.*

**3.** The government has asserted only its non-statutory official information privilege. There is no assertion of state secret, military, informers' or statutory privilege. See Note, Discovery of Government Documents and the Official Information Privilege, 76 Colum.L.Rev. 142 (1976). The government concedes that its privilege is qualified rather than absolute.

**4.** Given that the privilege is designed to encourage candid suggestions, advice, recommendations, and opinions, the privilege protects only suggestions, advice, recommendations, and opinions, rather than factual and investigatory

reports, data, and surveys in government files. *Johnson v. United States,* 76–2 U.S.T.C. ¶ 9,497 (N.D.Ind.1976); *Smith v. FTC,* 403 F.Supp. 1000, 1015 (D.Del.1975); *In Re Midwest Milk Monopolization Litigation,* 60 F.R.D. 12, 19 (W.D.Mo.1973); *Wood v. Breier,* 54 F.R.D. 7, 12 (E.D.Wis.1972); Note, Discovery of Government Documents and the Official Information Privilege, 76 Colum.L.Rev. 142, 160–162 (1976). See *Ernest & Mary Hayward Weir Foundation v. United States,* 508 F.2d 894, 895 n.2 (2d Cir.1974); *Kinoy v. Mitchell,* 67 F.R.D. 1, 11–12 (S.D.N.Y.1975); *Gaison v. Scott,* 59 F.R.D. 347 (D.Hawaii 1973). But see *Dos Santos v. O'Neill,* 62 F.R.D. 448 (E.D.Pa.1974); *Simons-Eastern Co. v. United States,* 55 F.R.D. 88 (N.D. Ga.1972). The government's appellate brief implicitly acknowledges the inapplicability of governmental privilege to "purely factual material." *Government Brief 13.*

Fed.Rules Serv.2d 975, 11 EPD ¶ 10,806, 70 F.R.D. 592 (D.S.C.1976); *Kinoy v. Mitchell,* 67 F.R.D. 1, 11, 14 (S.D.N.Y.1975); *SEC v. Bausch & Lomb, Inc.,* 19 Fed.Rules Serv.2d 332, 334 (S.D.N.Y.1974); *Center on Corporate Responsibility, Inc. v. Schultz,* 368 F.Supp. 862, 881 (D.D.C.1973); Note, Discovery of Government Documents and Official Information Privilege, 76 Colum.L.Rev. 142, 144 (1976). Although a district court's balancing of the competing interests will be reversed only for an abuse of discretion, *Brown v. Thompson,* 430 F.2d 1214, 1215–1216 (5th Cir.1970), the district court must use the proper interests in its balancing process.

■ In assessing LP's need, the district court should consider, *inter alia,* the importance of the documents to LP's defense, *SEC v. Nat'l Student Marketing Corp.,* 68 F.R.D. 157, 160–163 (D.D.C.1975), aff'd, 176 U.S.App.D.C. 56, 538 F.2d 404 (1976), *Kinoy, supra,* 67 F.R.D. at 12, *Dos Santos v. O'Neill,* 62 F.R.D. 448 (E.D.Pa.1974), *Amchem Products, Inc. v. GAF Corp.,* 64 F.R.D. 550, 553–554 (N.D.Ga.1974), *Wood v. Breier,* 54 F.R.D. 7, 10 (E.D.Wis.1972), and the availability elsewhere of the information contained in the documents, *Kinoy, supra, United States v. Illinois Fair Plan Ass'n,* 67 F.R.D. 659, (N.D.Ill.1975), *Dos Santos, supra,* 62 F.R.D. 448, *Gaison v. Scott,* 59 F.R.D. 347 (D.Hawaii 1973), see *McKillop v. Regents of the University of California,* 386 F.Supp. 1270, 1277–1278 (N.D.Calif.1975).

■ In assessing the government interest in secrecy, the district court should remember that the requested files are of completed investigations.[5] Often courts have recognized that there is less government interest in secrecy in completed, than in ongoing, investigations. See e. g., *Breier, supra,* 54 F.R.D. at 10 n.18.

■ The district court viewed the work product doctrine as being inapplicable to closed investigations.[6] Supporting the district court's determination are *United States v. IBM,* 66 F.R.D. 154, 178 (S.D.N.Y. 1974), 71 F.R.D. 376 (S.D.N.Y., filed May 14, 1976), *Honeywell, Inc. v. Piper Aircraft Corp.,* 50 F.R.D. 117, 119 (M.D.Pa.1970), *Hanover Shoe, Inc. v. United Shoe Mach. Co.,* 207 F.Supp. 407, 409–410 (M.D.Pa. 1962), and *Tobacco & Allied Stocks, Inc. v. Transamerica Corp.,* 16 F.R.D. 534, 537 (D.Del.1954). However, *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480 (4th Cir.1973), 509 F.2d 730 (4th Cir.1974), *cert. denied,* 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975), *United States v. O.K. Tire & Rubber Co.,* 71 F.R.D. 465, 1976 Trade Cas. ¶ 60,984 n.7 (D.Idaho 1976), *Burlington Industries, Inc. v. Exxon Corp.,* 65 F.R.D. 26, 43 (D.Md.1974), *Midland Inv. Co. v. Van Alystyne, Noel & Co.,* 59 F.R.D. 134, 138 (S.D.N.Y.1973), and *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.,* 275 F.Supp. 146 (E.D.Pa.1967), have found the work product doctrine applicable to bar discovery of work products in terminated litigation, at least of "closely related" litigation. *Anaconda Brass, supra; Midland Investment, supra.* The irreconcilably conflicting opinions have prompted courts and commentators to refer to the applicability of the work product doctrine to work product generated in anticipation of other litigation as lacking "decisive resolution" (*Midland Investment, supra,* 59 F.R.D. at 138), "unresolved" (Note, Discovery of an Attorney's Work Product in Subsequent Litigation, 1974 Duke L.J. 799, 810), and "not altogether clear," (J. Moore, Federal Practice ¶ 26.64(2) (2d ed. 1975)). Wright and Miller, however, have referred to the application of the work product doctrine to documents prepared in anticipation of other litigation as "[t]he sounder view . . ., at least if the two cases are closely related." Wright & Miller, Federal Practice & Procedure, § 2024 at 200–201 (1970). *Duplan,*

---

**5.** The district court found that the work product doctrine would bar discovery of "open" investigations, and LP has not appealed that determination.

**6.** The work product doctrine clearly applies to the work produced by government attorneys in anticipation of litigation. See *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975), and the cases cited therein.

*supra,* similarly has been hailed as "maintaining the delicate balance between reasonable inquiry through discovery and the privacy and professional integrity of the adversary system." Comment, Civil Procedure—Discovery—Work-Product Privilege Extends to Subsequent Litigation, 27 Vand. L.Rev. 826, 833 (1974).

Given the absence of definitive language in FRCP 26(b)(3), see *Duplan, supra,* 487 F.2d at 482, and the conflicting decisions, our decision has been difficult. On balance, though, we view the work product doctrine as protecting work produced in anticipation of other litigation. As *Duplan, supra,* 487 F.2d at 482–483 recognized, *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451,

> "clearly stands for the principle that the integrity of the adversary process must be safeguarded in spite of the desirability of the free interchange of information before trial. Its overriding concern is that the lawyer's morale be protected as he performs his professional functions in planning litigation and preparing his case. . . .
>
> "[T]he rationale is scarcely less applicable to a case which has been closed than to one which is still being contested. The decision was not in any manner based upon the rights or posture of the litigants vis-a-vis each other. . . .
>
> "[W]e find no indication that the Court [in *Hickman, supra*] intended to confine the protection of the work product to the litigation in which it was prepared or to make it freely discoverable in a subsequent law suit."

Were the work product doctrine an unpenetrable protection against discovery, we would be less willing to apply it to work produced in anticipation of other litigation. But the work product doctrine provides only a qualified protection against discovery, at least of products other than "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Duplan, supra,* 487 F.2d at 485; *Work-Product Privilege Extends to Subse-*

*quent, Unrelated Litigation, supra,* 27 Vand.L.Rev. at 833. Compare *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926 (N.D.Cal.1976), with *Duplan, supra,* 509 F.2d 730.

Our determination that the work product doctrine applies to work produced in anticipation of other litigation will require the district court, upon remand, to determine whether the documents the government claims are work products are, in fact, work products. See, e. g., *Burlington Industries, supra,* 65 F.R.D. at 42–43; *Garfinkle v. Arcata Nat'l Corp.,* 64 F.R.D. 688, 690 (S.D.N.Y.1974). Even if the district court finds the documents are work products in anticipation of litigation, it may, of course, compel production of those documents, should LP have a "substantial need of the materials in the preparation of [its] case" and be "unable without undue hardship to obtain the substantial equivalent of the materials by other means," keeping in mind that "[i]n ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." FRCP 26(b)(3). See e. g., *Burlington Industries, supra,* 65 F.R.D. at 33, 43; C. Wright, the Law of Federal Courts § 82 at 366–68 (2d ed. 1970).

On remand, the district court should determine the relevancy of the requested documents, and for documents containing relevant material determine the applicability of the government privilege and work product doctrines. In determining the applicability of government privilege, the district court should recognize that it shields only suggestions, advice, recommendations, and opinions, rather than factual and investigatory reports, data and surveys in government's files. The district court should similarly determine the applicability of the work product doctrine, which we have held applies to work produced in anticipation of other litigation, and whether LP has made

a sufficient showing to overcome the work production doctrine.

Vacated and remanded.