ON APPLICATION FOR REHEARING
ROBERTSON, Presiding Judge.
On application for rehearing the opinion of this court issued in this case on June 5,1992, is withdrawn and the following is substituted therefor.
This ease concerns a discovery issue in an administrative proceeding involving the Alabama Department of Environmental Management (ADEM), and The Sierra Club, The Alabama Conservancy and Tony Oddo (collectively referred to as Sierra).
The record in the instant case revealed that recently, as part of the mandatory triennial review of all water quality standards, ADEM proposed amendments to Alabama’s water quality standards with regard to aquatic life criteria for 30 priority pollutants and human health criteria for 108 priority pollutants (including criteria for dioxin). According to the record, dioxin is a probable human carcinogen that is produced by paper mills during the bleaching process of wood. The record reveals that there are currently ten paper mills releasing dioxin into Alabama waters.
Dioxin has been shown in laboratory studies to cause cancer, reproductive problems, and organ disorders among other physical ailments. The EPA recommended a criterion of zero for dioxin as it does for all human carcinogens, but, because this recommendation was ideal, the EPA calculated acceptable criteria values for dioxin by developing a measurement for the cancer potency of dioxin as it corresponds to upper risk levels in a range of one excess incidence of cancer in 100,000 to one in 10,000,000. A cancer potency factor provides an estimate of the cancer causing potential of a toxicant. The Food and Drug Administration (FDA) also developed cancer potency factors for dioxin. Statistics from the record reveal that the FDA’s estimate of dioxin’s cancer risk is nine times lower than the EPA’s estimate.
Cancer potency criteria used in establishing acceptable levels of dioxin in water are based upon several factors including the amount of fish a person eats and the average person’s body weight. The record reveals that ADEM did not conduct a study to determine how much the average Alabamian weighs or how much fish they consume in order to adopt a criterion for dioxin unique to Alabama’s characteristics. Instead, the record shows that ADEM chose to employ the less stringent national assumptions adopted by the FDA in establishing Alabama’s water quality standards for certain priority pollutants. Sierra wants to know why ADEM elected to do this, and ADEM’s position is that Sierra is not entitled to this information because the criteria it elected to use are acceptable by the EPA. ADEM further claims that the information that it relied on in its decision to adopt certain numeric criteria for use in developing Alabama water quality standards is protected from discovery under the “deliberative process privilege,” which is a sub-category of the executive privilege.
The record reveals that the EPA did accept ADEM’s use of the FDA’s cancer potency estimate in establishing Alabama criteria for this pollutant because the cancer potency factors employed by the FDA were within the bounds of uncertainty of the EPA’s approach. The record also shows, however, that the EPA encouraged Alabama to be mindful in terms of its public health policy that the FDA’s criteria were the lowest of all four federal agencies that developed a cancer potency factor for the pollutant. The EPA *925 further encouraged Alabama to investigate state fish and shellfish consumption patterns because the use of a nationwide average may not be adequate to protect populations consuming more than the national average, or subgroups of the populations, such as subsistence fishermen. The EPA offered to help Alabama seek funds to develop a state fish consumption estimate to be used in Alabama’s next triennial review of its water quality standards.
The Alabama Environmental Management Act, which is the general charter for ADEM, gives citizens the right to appeal ADEM decisions under the Alabama Water Pollution Control Act. The Alabama Environmental Management Commission (AEMC) adopts or rejects rules and regulations formulated by ADEM and, also, hears all appeals of ADEM’s administrative actions. The Act requires that ADEM allow for public participation in this rule-making process. § 22-22 — 9(f), Ala.Code 1975. In accordance with this requirement, ADEM held a public hearing to solicit comments on its triennial review process for water quality standards. Sierra was present at this hearing and opposed ADEM’s proposed amendments, claiming that the criteria it selected for use in establishing new water quality standards for the state would violate citizens’ implicit right under the Alabama Constitution to have a clean and healthful environment.
Sierra further contended that the water quality standard for dioxin should be zero as a matter of law according to the state constitution, the Alabama Water Pollution Control Act, the Alabama Environmental Management Act, state policy, and the public trust doctrine. However, ADEM submitted these proposed standards unchanged to AEMC, who adopted them on February 20, 1991.
Sierra filed an administrative appeal before the AEMC regarding these water quality standards. AEMC appointed Ira DeMent as administrative law judge (ALJ), to preside over the case and make a recommendation to AEMC according to the evidence presented to him. Sierra noticed the depositions of some of ADEM’s decision-makers who formulated the water quality regulations at issue and, also, sought discovery from some of the commissioners to find out what information they relied upon and understood when adopting the standards proposed by ADEM. ADEM refused to answer certain questions asked by Sierra during the depositions, claiming that it was cloaked by an executive privilege and did not have to explain how or why it chose certain criteria for use in Alabama over others. The ALJ agreed with ADEM and would not allow Sierra to make inquiries of this nature during discovery. Sierra filed a petition for a writ of mandamus in the Montgomery County Circuit Court to compel the ALJ to allow the requested discovery.
The trial court denied the petition for mandamus and held that Sierra could not depose members of ADEM, unless Sierra could make a strong showing of irregularity in the initial administrative process. The trial court also held that the ALJ ruling on any assertions of privilege could be adequately reviewed on appeal from the final agency action. Sierra appeals. The issue of the applicability of the deliberative process privilege in an administrative proceeding is one of first impression for this court.
Sierra contends that a governmental privilege does not apply in this case and that an appeal of an adverse final decision by AEMC is not an adequate remedy, since the record on appeal will not contain the relevant and material evidence which is necessary for a proper review. We will first discuss whether the executive privilege or the deliberative process privilege is applicable in this case. The executive privilege applies to governmental agencies and is defined by our supreme court as:
“[A] privilege claimed by a governmental body when it fears that discovery of its confidential information will seriously impair its ability to function. Historically, it has been reserved for military and diplomatic state secrets and is founded upon the ‘unfortunately necessary policy of fettering justice to promote national health.’ ”
LaMonte v. The Personnel Board of Jefferson County, 581 So.2d 866 (Ala.Civ.App.1991) (quoting Assured Investors Life Insurance *926 Co. v. National Union Associates, Inc., 362 So.2d 228, 232 (Ala.1978)).
The deliberative process privilege is a sub-category of the executive privilege. Although we have not heretofore addressed a discovery issue which concerns this privilege, we adopt the reasoning from other jurisdictions that the deliberative process privilege is a qualified privilege to be applied as narrowly as possible. We discern from our review of cases explaining this privilege that the agency has the burden of substantiating this claim of privilege by proving that the communications requested were tentative recommendations or opinions without precedential significance or operative effect. Exxon Corp. v. Dep’t of Energy, 91 F.R.D. 26, 43 (D.C.Tex.1981). Accordingly, the right to this privilege will be overcome if a litigant’s need for the materials and the need for accurate fact-finding override the government’s interest in non-disclosure. United States v. Leggett & Platt, Inc., 542 F.2d 655, 658 (6th Cir.1976).
This privilege is also not applicable to factual or objective material or data which may be severable from given deliberative memorandum or material which evaluates implementation of a given governmental decision. U.S. v. Board of Educ. of City of Chicago, 610 F.Supp. 695, 697 (D.C.Ill.1985). In other words, this privilege does not extend to post-decisional or so-called working law communications, that is, explanations or interpretations of existing governmental decisions adopted as the agency’s position on an issue or used in dealings with the public. Id.
We have reviewed the questions that ADEM was not required to answer, and we find answers to questions of this nature would not require revealing confidential information, nor would providing a response to these questions seriously impair ADEM’s ability to function. We also find that these water quality standards concern an issue of public concern. Accordingly, we hold that Sierra’s questions, which are geared at the explanation or interpretation of the factual or objective material that ADEM relied on in proposing these water quality standards, are not shielded by the executive privilege or its sub-category, the deliberative process privilege.
The Alabama Legislature has imposed a statutory duty on ADEM to strive to maintain and improve the quality of our water in the interest of public health and welfare. While we note that the EPA commended ADEM in some areas for its efforts to increase protection of our state waters, Sierra’s complaint alleges that the adoption of the proposed amendments to existing water quality standards in other areas violates the state constitution and other applicable state statutes.
While these constitutional questions are not for our review, we base our holding in this case on the logical conclusion that the information that Sierra is seeking to ascertain from ADEM in the present administrative hearing would go to the very core of issues of this nature. Section 22-22A-7(c)(5) and (6) of the Alabama Code states that in hearings and procedures before the AEMC, the strict rules of evidence prevailing in the courts do not apply to the parties, and that a full and complete record shall be kept of all the proceedings before the AEMC. Moreover, any order of the AEMC constitutes a final action of the department and is appeal-able to circuit court “for judicial review on the administrative record_” § 22-22A-7(c)(6), Ala.Code (emphasis added).
Presently, the administrative record is completely lacking in factual explanation or objective reasons behind ADEM’s rationale in adopting the water standards that it chose. Accordingly, in light of our finding that a governmental privilege does not apply in this case, we hold that Sierra has a right to make inquiries of ADEM regarding factual or objective material that ADEM relied on when making its decision to adopt the water quality standards in issue, and to have the responses admitted into the administrative record.
Consequently, we need not address the issue of whether the ALJ ruling on assertions of privilege could be adequately reviewed on appeal, as this issue is now moot.
This case is due to be and is hereby reversed and remanded to the trial court with instructions to grant Sierra’s petition to compel the ALJ to allow Sierra’s requested dis *927 covery from ADEM and AEMC members who were involved in proposing and adopting the water quality standards at issue.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING DENIED.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THIGPEN, J., concurs.
RUSSELL, J., dissents.