**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Dominick E. BARTONE, Defendant-
Appellant.**

**No. 18132.**

United States Court of Appeals
Sixth Circuit.

Sept. 6, 1968.
Certiorari Denied Jan. 13, 1969.
See 89 S.Ct. 631.

Arlene B. Steuer, Cleveland, Ohio, for appellant; Cozza & Steuer, Cleveland, Ohio, on brief.

Philip R. Michael, Atty., Dept. of Justice, Washington, D. C., for appellee; Fred M. Vinson, Jr., Asst. Atty. Gen., William Lynch, Robert D. Gary, Attys., Dept. of Justice, Washington, D. C., on brief.

Before PHILLIPS, CELEBREZZE, and COMBS, Circuit Judges.

COMBS, Circuit Judge.

Appellant, Dominick E. Bartone, was found guilty by a jury on two counts of willful evasion of federal income taxes in violation of 26 U.S.C. § 7201. It was charged in Count I that he should have reported $202,693.25 taxable income in 1959, but reported only $7,167. It was charged in Count II that he should have reported $19,190.63 in 1961, but reported $10,400. He was sentenced to three years on Count I and to eighteen months on Count II, the sentences to run concurrently. Several grounds of error are assigned.

The facts relating to Bartone's 1959 income are not susceptible to easy summarization. The evidence reveals a complicated web of financial dealings between Bartone, representatives of the Dominican Republic, and other individuals who were partners with or agents of Bartone in various enterprises. The general pattern of the evidence reveals that Bartone was engaged in selling munitions and airplane parts to the Dominican Republic. Involved in these transactions was a Panamanian corporation, Servicios Internacionales, S. A. There is considerable evidence that Servicios was a corporate shell, engaged in no business and wholly owned by Bartone. Much of the money Bartone received and expended in 1959 went into or came out of bank accounts in the name of Servicios.

We will not attempt a chronological recital of receipts and disbursements. Two specific instances will serve as examples. On July 23, 1959, Bartone purchased, with cash, a $150,000 cashier's check in Miami. In late August, this check was used to open a checking account in Servicios' name in the Royal Bank of Canada. In July, 1959, Bartone, through agents, purchased arms in North Carolina for $12,000. The individual who obtained these arms for him testified that Bartone said they were worth $307,000. On July 24, 1959, Bartone accompanied a member of the Dominican consulate in Miami, Emanuel Perez Sosa, to a Miami bank. There, $300,000 was obtained on a check to Sosa from the Dominican Consul in Miami. The money was counted and apparently turned over to Bartone. The evidence supports the conclusion that Bartone received from these and other transactions in 1959 income in at least the amount charged in Count I of the indictment.

The principal item of 1961 income was $25,000 Bartone borrowed from Robert Meissner. The money was loaned to him for use as a deposit on a bid for the purchase of a bankrupt Canadian corporation, Niagara Crushed Stone. Meissner was told that the money was to be used only in making the bid and that it would be returned to him after it had served that purpose. However, after the bid was unsuccessful and the money returned to Bartone, he used it for his own purposes without Meissner's knowl-

edge. There was evidence of other financial deals in 1961 from which Bartone received income in the amount claimed by the Government. No evidence was offered by appellant.

Much of the Government's evidence as to Bartone's financial deals and his connection with Internacionales Servicios is based on the testimony of three attorneys. This testimony was admitted over the strenuous objections of appellant who contends it falls within the attorney-client privilege since the attorneys represented him and the corporations involved.

■ It is true, as appellant contends, that the attorney-client privilege extends to corporations. Radiant Burners, Inc. v. American Gas Association, 320 F.2d 314 (7th Cir. 1963). But, the privilege is not all inclusive. Here, the testimony of the attorneys was limited almost entirely to tracing the transfer of funds to and from Bartone and various corporations. One of the attorneys, who was also Secretary-Treasurer and a Director of Servicios, testified as to the nature and organization of that corporation. There is no indication that any of this testimony concerned legal advice given to Bartone or to the corporations, nor was any confidence disclosed which came to the witnesses through an attorney-client relationship.

■■ The mere fact that a person is an attorney does not render as privileged everything he does for and with a client. Ministerial or clerical services such as those testified to here are not within the privilege. McFee v. United States, 206 F.2d 872 (9th Cir. 1953); Pollock v. United States, 202 F.2d 281 (5th Cir. 1953). We find no error in regard to admission of the attorneys' testimony.

By the use of charts and general explanation, a Government agent was permitted to summarize Bartone's financial dealings in 1959 and 1961. Appellant contends that admission of the summary was error since it included as income to Bartone money which had gone to Servicios and other corporations, as well as the Meissner loan.

■■ The use of summaries is not without danger, as the Supreme Court said in Holland v. United States, 348 U.S. 121, 128, 75 S.Ct. 127, 131, 99 L.Ed. 150 (1954): "[B]are figures have a way of acquiring an existence of their own, independent of the evidence which gave rise to them." Thus, it is necessary that the trial judge carefully examine this type of evidence and supporting exhibits, out of hearing of the jury, in order to determine that everything contained in the summary is supported by the proof. Moreover, the jury should be carefully admonished that a summary is not evidence and has no significance if the underlying evidence is not believed.

■ The trial court in this case scrupulously examined the proposed summary and charts prior to admission, and thereafter painstakingly and repeatedly cautioned the jury as to their purpose. Thus, there was no error in admission of this testimony and the exhibits. Barber v. United States, 271 F.2d 265 (6th Cir. 1959); Epstein v. United States, 246 F.2d 563 (6th Cir. 1957), cert. denied, 355 U.S. 868, 78 S.Ct. 116, 2 L.Ed. 2d 74 (1957).

Other assignments of error relate to the District Court's failure to give instructions on certain factors bearing on the appellant's intent to evade taxes. These concern his alleged belief that he had the right to rely on advice of counsel; that he was entitled to a business deduction for a lost investment; and that as a foreign corporation Servicios was not subject to tax. We have considered these contentions and find them to be without merit.

■ Complaint is also made of the court's definition of willful intent. While the instructions could have been more technically accurate on this point, we are of the opinion that when considered as a whole they properly presented

this issue to the jury. We note, too, that there was no objection to the court's instructions.

Other contentions are similarly without merit.

Judgment affirmed.