

Paul J. Curran, U. S. Atty., for United States Government by Michael Q. Carey, Asst. U. S. Atty., of counsel.

Robert Louis Cohen, New York City, for Richard G. Rosenbaum.

**In the Matter of a Grand Jury Subpoena served upon Richard G. ROSENBAUM.**

**No. 74 Cr. Misc. #1.**

United States District Court, S. D. New York.

Aug. 1, 1975.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

The government has moved for rehearing of this Court's Decision (dated December 22, 1974) denying the government's motion for an order directing Richard G. Rosenbaum, an attorney, to testify before a federal grand jury concerning a phone conversation he had with Martin Lucio on March 13, 1974, regarding Lucio's testimony earlier that day at the criminal trial of Moses Young, Rosenbaum's client. Following that conversation, defense counsel had asked the district court to strike Lucio's testimony (which had been offered as part of the defense case). Counsel stated that he had reason to believe that Lucio's testimony was not entirely truthful and may have been entirely untruthful. The trial court struck the testimony, and the trial proceeded. Young was acquitted of the crime of assaulting a federal officer. The grand jury is now investi-

gating whether Lucio committed perjury at the trial.[1]

In its motion for reargument, the government claims that any "work product" privilege which might prevent Rosenbaum from testifying as to conversations he had with third persons in the course of preparing and conducting Young's defense is at best a qualified privilege, citing e.g., *United States v. Brown*, 478 F.2d 1038, 1041 (7th Cir. 1973). It maintains that it has "good cause" or sufficient need for the testimony to overcome any qualified privilege that may apply. Rosenbaum's testimony as to admissions made to him by Lucio would be evidence admissible against Lucio in a trial for perjury. Similarly, such admissions might be admissible against Young as admissions of a co-conspirator, if Young were charged with suborning perjury. In response, Rosenbaum argues that the government has not established good cause, because the government has not alleged that it has made any effort to get the testimony of Moses Young or Young's girlfriend.[2] In addition, Rosenbaum claims that the privilege, as it relates to testimony concerning his conversation with Lucio, is absolute, rather than qualified, citing *In re Grand Jury Proceedings*, 473 F.2d 840, 848 (8th Cir. 1973).

■■ I believe that Rosenbaum, despite the additional showing made by the government, cannot be compelled to testify concerning the substance of his telephone conversation with Lucio. There is no question but that Rosenbaum made this call in the course of conducting Young's defense during trial. Moreover, although the government indicates that Lucio is the target of the grand jury's investigation, any admissions made by Lucio to Rosenbaum would most probably incriminate Young in the circumstances of this case.[3] Furthermore, the information sought relates only to a possible past crime, the effects of which were minimized, because following his call to Lucio, Rosenbaum successfully moved to have Lucio's testimony stricken from the record in Young's criminal trial on the ground that part or all of it may have been untruthful. In such circumstances, I believe that the work-product privilege, which in the criminal context reflects both fifth and sixth amendment concerns,[4] prevents the grand jury from compelling Rosenbaum to testify, in effect against his former client, concerning the conversation with Lucio, despite the government's allegation of good cause. See *In re Grand Jury Proceedings*, 473 F.2d 840, 848 (8th Cir. 1973).

The motion for rehearing is granted and the original decision will be adhered to.

It is so ordered.

---

1. The facts are more fully set forth in this Court's previous decision in this case.

2. Lucio had testified that Cathy Balzano, a girl he dated, was a friend of Young's girlfriend and that Balzano had happened to speak of Young's case to him. Lucio said he realized from what Balzano said that Young was charged with an assault which Lucio had witnessed. The government has been unable to locate Cathy Balzano and doubts her existence. Young's girlfriend, if she exists, would presumably be able to shed some light on whether there is a Cathy Balzano, where she might be located, and whether she was dating Lucio during the period in question.

3. The government admits that if Young were called before the grand jury, he would be advised that he may become the target of a grand jury investigation and that he had a Fifth Amendment privilege which he may invoke. It states that "[i]t is most likely that, given such warnings, Young would invoke his privilege against self-incrimination . . . ."

If Lucio's story about how he came to testify is untrue, not to mention his testimony as to the assault he claimed to have witnessed, then Young would in all probability have been aware that such testimony was false, as he would know how Lucio had come to testify for the defense. Of course, he may also have discussed Lucio's testimony with him.

4. See *In re Terkeltoub*, 256 F.Supp. 683, 685 (S.D.N.Y.1966). During the course of a criminal trial the work product privilege prevents the government from acquiring through the grand jury material to which it would not be entitled under the provisions governing discovery in criminal cases.