In re GRAND JURY PROCEEDINGS.

UNITED STATES of America, Appellee,

v.

Armando GUERRERO, etc., Appellant.

No. 77–3193
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 18, 1978.

Donald F. Spain, Miami, Fla., for appellant.

Robert W. Rust, U. S. Atty., R. Jerome Sanford, Asst. U. S. Atty., Miami, Fla., for appellee.

Before GOLDBERG, CLARK and FAY, Circuit Judges.

FAY, Circuit Judge:

Appellant, Armando Guerrero, was subpoenaed to appear before the United States Grand Jury, in and for the Southern District of Florida on September 21, 1977, to provide voice exemplars and fingerprint standards.

On September 21, after his appearance before the grand jury where he refused to give either the voice exemplars or the fingerprint standards, Guerrero was brought before the Honorable James Lawrence King, before whom a petition was filed by the government for an order directing Guerrero to comply. That petition stated:

(1) Federal Grand Jury No. 77–4 (MIA) for the Southern District of Florida is now conducting an investigation of alleged illegal activities in said district; said investigation involves possible violations of Title 18, United States Code,

1975); *cf. Norton v. Mathews,* 427 U.S. 524, 96 S.Ct. 2771, 2774–75, 49 L.Ed.2d 672 (1976).

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409.

Section 960.[1] Armando Guerrero has been subpoenaed by said Grand Jury and fully advised that he is a potential defendant in this investigation.

(2) It is essential and necessary to the aforesaid Grand Jury investigation that Armando Guerrero furnish before and to the said Grand Jury standards of his fingerprints and voice exemplars. Such standards will be used solely as a standard of comparison.

(3) Respondent, Armando Guerrero, appeared pursuant to subpoena before Federal Grand Jury No. 77–4 (MIA) on September 21, 1977. At that time, the respondent, was directed by the Foreman of the Grand Jury to furnish fingerprint standards out of the presence of the Grand Jury, under the supervision of the Grand Jury's duly designated agents. The respondent refused, asserting constitutional privilege.

The lower court granted the petition and ordered Guerrero to comply. Guerrero provided the fingerprint standards but refused to supply the requested voice exemplar. He did agree, however, to any other phrases the government might request.

The requested voice exemplars Guerrero refused to supply were:

If it is a Cuban official, which is my enemy at the time, yes, I would do it. At any time I am ordered to do it.

I would not quote them on being innocent in any way. They were Cuban officials.

They were communist officials and any communist kind official whether Cuban or other nationality playing the same game that Castro is playing should be dealt with the same way.

On September 23, 1977, the district court entered a supplemental order directing Guerrero to supply the requested voice exemplars. Guerrero again refused, asserting his privilege under the Fifth Amendment of the Constitution. Guerrero also filed a memorandum of law moving to quash the subpoena because the government wished to obtain these exemplars to determine whether Guerrero was "the man in the hood" who had appeared in the CBS Television News Special, "The Secret Army of the CIA".

Another hearing was held before Judge King on September 30, 1977, on the government's Petition to Show Cause. Guerrero again argued against the relevance of the requested voice exemplars and requested the court to view the tape of the television program to so determine.

On October 4, 1977, Judge King ordered the government to file an affidavit specifying that the voice exemplar sought is relevant to the grand jury's investigation, that the investigation undertaken by the grand jury is properly within the grand jury's jurisdiction, and that the voice exemplar is sought primarily for the purpose therein described. The affidavit was filed on October 5, 1977, and is set out in the margin.[2]

1. Expedition against friendly nation
   Whoever, within the United States, knowingly begins or sets on foot or provides or prepares a means for or furnishes the money for, or takes part in, any military or naval expedition or enterprise to be carried on from thence against the territory or dominion of any foreign prince or state, or of any colony, district, or people with whom the United States is at peace, shall be fined not more than $3,000 or imprisoned not more than three years, or both.

2. 1. I am an Assistant United States Attorney for the Southern District of Florida.
   2. Federal Grand Jury (77–4 (MIA)) is investigating violations of Title 18, United States Code, Section 960 (Expedition Against A Friendly Nation). Title 22, United States Code, Section 2778(b)(2) (Exporting Munitions of War), and Title 26, United States Code, Section 5861(d) (Unlawful Possession of Machine Guns and Destructive Devices)
   3. On June 10, 1977, CBS television broadcast a documentary entitled "The CIA's Secret Army," involving anti-Castro Cuban exile terrorism originating from Miami, Florida. A portion of this program involved interviews of two masked men wearing military-type clothing, in a warehouse allegedly "near Miami", containing weapons and ammunition. The two masked men made statements concerning their opposition to Communist Cuba, attacks on Cuban officials, and acts of terrorism.
   4. The weapons and clothing of the men depicted on the television program have been viewed by law enforcement personnel who are of the opinion that these items are the same or similar to items seized on August 15, 1977 in Miami, Florida.

Judge King found the affidavit sufficient and ordered Guerrero to comply with the grand jury subpoena by October 13, 1977. He refused and was adjudged in civil contempt pursuant to 28 U.S.C. § 1826.

Guerrero appealed.

The Supreme Court in *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), held the compelled production of voice exemplars by subpoena before the grand jury does not contravene the Fourth Amendment privilege against unreasonable searches and seizures and, therefore, no showing of reasonableness was required before the witness could be compelled to comply. *Dionisio* also held that compelled production of voice exemplars does not violate the Fifth Amendment where "[t]he voice recordings were to be used solely to measure the physical properties of the witnesses' voices, not for the testimonial or communicative content of what was to be said." 410 U.S. at 7, 93 S.Ct. at 76.8. We affirm the case at bar because it falls within the holding of *Dionisio*.

Both parties to this appeal meet the question of requiring an affidavit by the government to justify the compulsion of requested testimony by the grand jury. See *In re Grand Jury Proceedings*, 486 F.2d 85 (3rd Cir. 1973) and *In re Grand Jury Proceedings*, 507 F.2d 963 (3rd Cir. 1975). This court has decided it will not impose such a requirement without some showing of harassment or prosecutorial misuse of the system. *In re Grand Jury Investigation (United States v. McLean)*, 565 F.2d 318 (5th Cir. 1977).

Accordingly, the district court's order of December 6, 1977, adjudging Armando Guerrero in contempt and ordering him into the custody of the United States Marshal until compliance with the order to provide voice exemplars or until the term of the grand jury expires on December 2, 1978, is affirmed.

6. The voice exemplars requested by the Grand Jury are not to be used for their testimonial or communicative content, but solely to measure the physical properties of ARMANDO GUERRERO's voice.

7. ARMANDO GUERRERO is a potential defendant in this investigation.
The affidavit was apparently misnumbered by the United States Attorney.