**In re GRAND JURY PROCEEDINGS (John DOE).**

**Miscellaneous.**

United States District Court,
N.D. Ohio, E.D.

Nov. 18, 1983.

David O. Bauer, U.S. Dept. of Justice, Cleveland, Ohio, for plaintiff.

Joshua R. Treem, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

This matter calls for an examination of the scope of the attorney-client privilege in the context of a Grand Jury proceeding. An unidentified intervenor, "John Doe", moves this Court to quash a subpoena issued to his attorney ordering the attorney to appear before a Grand Jury and bring certain records related to the transfer of

moneys. Upon consideration, this Motion to Quash is denied.

### FACTS

Unidentified intervenor "John Doe" is the client of Arnold Weiner, an attorney from Baltimore, Maryland. Weiner was subpoenaed to appear before the Special Grand Jury sitting in this district on March 7, 1983. The subpoena compelled Weiner to testify and produce:

> All records relating to the wire transfer of $61,625.00 from Metro Facilities, Amsterdam on or about August 17, 1978 to Melnicove, Kaufman & Weiner, account # 06 99 882, First National Bank of Baltimore, Maryland, Baltimore (Main branch). These records should include, but not be limited to, those relating to receipt, classification, and/or disbursement of said funds.

Weiner is a member of the law firm of Melnicove, Kaufman & Weiner. Prior to Weiner's scheduled appearance date, another attorney, Joshua Treem, contacted the government on behalf of "John Doe" and asked that Weiner's appearance be delayed. The government agreed to postpone Weiner's appearance until March 9, 1983. On that date Weiner appeared in Cleveland with Treem who filed a Motion to Intervene on Behalf of Joe Doe, as well as a Motion to Stay Weiner's Grand Jury appearance and a Motion to Quash the Grand Jury subpoena.

On the same day, the parties appeared before this Court for a hearing on the motions. The Motion to Intervene was granted and both parties presented evidence to the Court *ex parte* and *in camera.*

Weiner presented the subpoenaed documents for *in camera* review and asserted that John Doe is his client. He explained the nature of the work he does for John Doe and contended that complying with the subpoena and/or even revealing the identity of his client would be a breach of the attorney-client relationship.

The government offered the oral affidavit of Internal Revenue Service Special Agent Richard Rosfelder to explain the

progress of the investigation and the documents and testimony which were subpoenaed as part of the Grand Jury proceeding. The government asserted that the information sought was not protected by the attorney client privilege, because the attorney's functions were purely ministerial or because the crime-fraud exception permitted the attorney-client privilege to be pierced.

At the conclusion of the parties' presentations, the Court granted the Motion to Stay Weiner's appearance before the Grand Jury pending a ruling on the Motion to Quash.

## CONCLUSIONS OF LAW

### I. *Motion to Intervene*

■ Through attorney Joshua Treem, and the testimony of Weiner, John Doe established that Weiner is his attorney and that the records about which Weiner is being called to testify relate to, and reveal the identity of, John Doe. To the extent that Weiner is being subpoenaed to disclose information which may fall within the attorney-client relationship, John Doe's Motion to Intervene is well taken and is granted pursuant to Fed.R.Civ.P. 24(a)(2) [1] and *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1917). The reasoning behind *Perlman,* and the cases which follow it, is that intervention of right is permitted to allow an otherwise "powerless" third party to appeal an adverse ruling on a Motion to Quash when the subpoenaed party cannot always be expected to risk a contempt citation in order to protect the intervenor's interests. *In re Katz,* 623 F.2d 122 (2d Cir.1980). If this Court declines to quash the subpoena issued to Weiner, he will be faced with the choice of refusing to comply and thereby risking contempt and possible incarceration, or of complying and thereby possibly jeopardizing John Doe's interests. Under these circumstances, this Court finds that John Doe's interests are not adequately protected by Weiner and the Motion to Intervene must therefore be granted.

### II. *Motion to Quash*

#### A. ˙Attorney-Client Relationship

John Doe contends the subpoena should be quashed because the information sought is protected by the attorney-client privilege. This Court was satisfied, by the testimony at hearing, that Weiner is, in fact, John Doe's attorney. The focus of the inquiry here is whether that relationship should prevent Arnold Weiner from appearing before the Grand Jury to produce the subpoenaed documents and testify concerning them, even if compliance with the subpoena may implicate John Doe. Determination of this troublesome issue requires this Court to balance the competing purposes served by the Grand Jury on the one hand, and by the attorney-client privilege on the other.

■ The Grand Jury is fundamental to our system of criminal justice. It has the dual function of determining whether there is probable cause to believe a crime has been committed, while protecting citizens from unfounded criminal prosecutions. *Branzburg v. Hayes,* 408 U.S. 665, 686–687, 92 S.Ct. 2646, 2659–60, 33 L.Ed.2d 626 (1972). The attorney-client privilege is fundamental to our adversarial system of prosecution and defense. It was developed to promote full and open consultation between client and legal advisor. To that end, the privilege protects from disclosure confidential communications made by a client to an attorney regarding legal advice. *In re Special Grand Jury No. 81–1 (Harvey),* 676 F.2d 1005 (4th Cir.1982). Hence, the ultimate purpose of both the Grand Jury and the attorney-client privilege is the ascertainment of truth. The Grand Jury seeks to prosecute the culpable and shield

---

**1.** Rule 24(a)(2) provides:

Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

the innocent from persecution. The attorney seeks to learn all the facts in order to exonerate the righteous and adequately defend the rest from unduly harsh consequences. To reconcile the competing values served by the attorney-client privilege and the grand jury, the privilege must be upheld only where necessary to achieve its purpose. *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). Since the privilege may be invoked in derogation of the truth, it must not be lightly created or expansively construed. *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108–09, 41 L.Ed.2d 1039 (1974). Rather, the general and time-honored proposition of law is that the public has a right to every man's evidence. *Id.* at 709, 94 S.Ct. at 3108 (citing *Branzburg v. Hayes, supra*).

▪ To be exempted from this general rule, the party invoking the attorney-client privilege bears the burden of proving the existence of that privilege. Simply establishing the fact of an attorney-client relationship does not automatically activate the privilege. *Matter of Walsh,* 623 F.2d 489, 493 (7th Cir.1980); *United States v. Bartone,* 400 F.2d 459, 461 (6th Cir.1968).

### B. Three-Prong Test

John Doe contends that, once the attorney-client privilege is invoked, it is incumbent upon the government to demonstrate, by affidavit, that: 1) the information sought is relevant and necessary to the investigation; 2) the investigation is within the Grand Jury's jurisdiction; and 3) the information sought is not for some other purpose. The Sixth Circuit has not directly considered this argument, and other circuits which have considered the propriety of compelling the government to make a preliminary showing to justify a subpoena are not in agreement. *See, In re Grand Jury Proceedings, (Schofield),* 486 F.2d 85,

93 (3d Cir.1973) ("... we think it reasonable that the Government be required to make some preliminary showing by affidavit that each item is at least relevant to an investigation being conducted by the grand jury and properly within its jurisdiction and not sought primarily for another purpose."); *But see, Matter of Walsh, supra* at 493, ("... since there is no privilege to refuse to appear before the grand jury, there can be no privilege to refuse to appear before the grand jury until the government demonstrates some compelling need for the counsel's testimony."); *In re Special Grand Jury No. 81–1 (Harvey), supra* at 1011, ("We reiterate, however, that we do not adopt the *Schofield* rule that a preliminary showing must be made for every grand jury subpoena."

This Court agrees with the *Harvey* court and the Fifth Circuit that each case must turn on its own facts and circumstances. *In re Grand Jury Proceedings (Jones),* 517 F.2d 666, 668, 671 (5th Cir.1975). Accordingly, this Court declines to hold that the *Schofield* requisites must be met in all cases, or even in this particular dispute. However, considering the fact that this Court already determined at the hearing that the government had established the first two prongs of the *Schofield* test,[2] in an abundance of caution, it is appropriate to inquire now whether the third prong of *Schofield* is met.

▪ John Doe claims the third prong of *Schofield* is not met. In his brief, John Doe contends that the government is impermissibly using the Grand Jury investigation as a shortcut to learn the identity of Weiner's client and as a means for a fishing expedition. "... Given the stated nature of the investigation, the government can include virtually every activity within its suspected tax and fraud investigation." John Doe's Reply Brief at p. 6. The government's *in camera* affidavit[3] clearly

2. The information sought in the subpoena is relevant and necessary to the investigation; and the investigation is within the Grand Jury's jurisdiction. Transcript p. 51.

3. John Doe's request to examine the government's oral affidavit, which was presented to the Court *ex parte,* is denied. It is well-established policy in the federal courts that the secrecy of grand jury proceedings is generally to be

establishes that the identity of Weiner's client is known by the government. John Doe's briefs also raise, in the Memorandum at p. 2 and the Reply at pp. 4–6, the concern that more than one of Weiner's clients may be identified. He hints that these clients may now, or will in the future, be targets of investigation. He suggests that John Doe's relationship to these clients and the disclosure of their identities will "provide information that is a necessary link in the chain of evidence that the government needs to indict the target(s)." Memo at p. 5.

■ The fear that the subpoenaed information will disclose new information and perhaps open new leads is not sufficient to quash the subpoena. Such a consequence, if Weiner's and his client's fears are justified, does not constitute an impermissible purpose when the government has established to the Court's satisfaction a primary purpose which is different than the feared result. Moreover, potential identification of other unknown clients raises the possibility for the conflict of interest alluded to in *Matter of Walsh, supra* at 493. The Walsh court held that multiple representation of clients before the grand jury complicated the attorney-client privilege claim and further required the attorney to identify on whose behalf the privilege was asserted. The requirement is reasonable in order to guard against the withholding of information on behalf of a phantom client, or one to whom the privilege does not apply. In the instant case, this Court rejects as unworkable John Doe's attempt to use a "shot-gun" approach and claim that if the privilege doesn't apply to one particular client, then it must apply to another. John Doe's argument on the multiple clients issue brings this Court to the issue of whether the identity of Weiner's client is privileged.

breached only after a showing of compelling necessity. *United States v. Short,* 671 F.2d 178, 184 (6th Cir.1982); *United States v. Proctor & Gamble Co.,* 356 U.S. 677, 681–682 n. 2, 78 S.Ct. 983, 984 n. 2, 2 L.Ed.2d 1077 (1958). Some of the reasons for this secrecy include preventing the escape of those whose indictment may be

### C. Applicability of the Privilege

John Doe contends that his attorney should not be required to disclose the records relating to the wire transfer of $61,-625.00 because, in his case, communications regarding the name of the client, the identity of the person transferring the funds, the nature of the transfer (whether done for ministerial reasons or whether transferred as a retainer or a portion thereof) are privileged.

### 1) *Name of Client and Fee Arrangement*

■ The general rule is that the identity of an attorney's clients and the nature of his fee arrangements are not confidential communications protected by the privilege once a party demonstrates a legitimate need for a court to require disclosure. *In re Grand Jury Proceedings,* 600 F.2d 215, 218 (9th Cir.1979), *citing Baird v. Koerner,* 279 F.2d 623 (9th Cir.1960). This Court has already determined that disclosure is necessary and relevant. The exception to the general rule was first discussed in *Baird v. Koerner, supra.*

> ... The name of the client will be considered privileged matter where the circumstances of the case are such that the name of the client is material only for the purpose of showing an acknowledgement of guilt on the part of such client of the very offenses on account of which the attorney was employed....

*Id.* at 633. The *Baird* holding was later interpreted in the context of a grand jury proceeding:

> ... A client's identity and the nature of that client's fee arrangements may be privileged where the person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate that client in the

contemplated; and preventing subornation of perjury or tampering with witnesses who may testify before the grand jury and later appear at the trial of those indicted by it. *U.S. v. Proctor & Gamble, supra.* John Doe has not demonstrated a particularized need for the transcript.

very criminal activity for which legal advice was sought.

*United States v. Hodge & Zweig,* 548 F.2d 1347, 1353 (9th Cir.1977). John Doe contends that disclosure of his identity would provide a link in the chain of evidence necessary for an indictment, and hence will incriminate him.

■■■ As indicated above, John Doe's argument is mooted by the fact that his identity is no secret to the government. Moreover, disclosure of the existence of a retainer agreement between John Doe and his attorney is similarly not precluded. The existence of the attorney-client relationship can best be confirmed by proof of payment. Disclosure of the nature of the retainer agreement is necessary to evaluate the validity of the government's argument that Weiner's services to John Doe were ministerial. By refusing to disclose this information, John Doe is relying on facts to support an argument without allowing anyone an opportunity to evaluate its basis.

### 2) *Disclosure of Documents Related to the Transfer of Funds*

John Doe's argument suggests that he fears production of the subpoenaed documents will link him with the documents. Apparently, this association is the incriminating link which he seeks to avoid. However, the sort of association involved in the instant case is not analogous to the links which were not allowed in *Baird v. Koerner, supra* and *In re Grand Jury Proceedings (Jones), supra,* and *NLRB v. Harvey,* 349 F.2d 900 (4th Cir.1965). The rule in *Baird* forecloses links that will reveal the client's ultimate motive for seeking legal advice. Here the link is indirect and invoking the attorney-client privilege in this context is not permissible. Rather, John Doe's argument is, in fact, really a Fifth Amendment assertion. The Fifth Amendment right against compelled self-incrimination is a personal right which may be asserted only by the holder of the right. The Supreme Court recognizes, however, that documents which are protected by the Fifth

Amendment in the hands of the client continue to be protected by the privilege once the documents are transferred to an attorney for the purposes of obtaining legal advice. *Fisher v. United States,* 425 U.S. 391, 403–405, 96 S.Ct. 1569, 1577–78, 48 L.Ed.2d 39 (1976). The applicability of the privilege under these circumstances hinges upon whether the subpoenaed documents could have been obtained while they were in John Doe's possession.

■■■ Here, there is no evidence that the subpoenaed documents were ever in the hands of John Doe. It appears that they were not. At best, it seems plausible that identical sets of documents related to the wire transfer of funds were in the hands of both John Doe and Weiner. Assuming that John Doe did transfer the subpoenaed documents, this Court finds that the Fifth Amendment does not proscribe their production by Weiner.

■■■ The Fifth Amendment does not independently prohibit the compelled production of every sort of incriminating evidence. It applies "only when the accused is compelled to make a *testimonial* communication that is incriminating." *Id.* at 408, 96 S.Ct. at 1579. In *Fisher,* the Supreme Court held that papers in the hands of an attorney had to be produced and stated:

> ... a taxpayer cannot avoid compliance with the subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else.

*Ibid.* at 412, 96 S.Ct. at 1580–81. This Court finds that the mere fact that the subpoenaed documents may contain incriminating information is not sufficient to prevent their production.

The Fifth Amendment is not violated simply because papers, on their face, might incriminate the client, for the privilege protects a person only against being incriminated by his own compelled testimonial communications. *Ibid.* at 409, 96 S.Ct. at 1580. As for the idea that the act of producing the papers might be "testimonial",

the Supreme Court held that this is so only to the extent that production of the papers concedes their existence and the fact of their possession and control. In the instant case, it is not disputed that the documents exist and are in Weiner's possession. Finally, *Fisher* also disposes of John Doe's argument that production of the documents constitutes impermissible compulsory self-authentication.

To the extent that John Doe's identity in connection with the fund transfers is not known to the government, and John Doe seeks to protect his identity through the attorney-client privilege, his argument must fail. While there are situations in which an undisclosed client's identity may be shielded, John Doe has not convinced this Court that such a situation is present here. His argument becomes circular and eventually falls into the jaws of the government's crime/fraud argument. John Doe claims that the government's only reason for learning his identity in connection with the wire transfer of moneys is to link him with the offense for which he consulted his attorney. He contends that Weiner's very act of furnishing the subpoenaed documents would constitute a prohibited incriminatory testimonial communication. Brief at 9. Yet John Doe conversely claims that the crime/fraud exception to the attorney-client privilege does not apply. The difficulty with John Doe's argument is that the government is requesting information about a wire transfer of funds that occurred during the attorney-client relationship. If John Doe truly believes that Weiner's revelation of his client's identity will incriminate John Doe, then the client seems to be implicating his attorney in a transaction that is, or appears to John Doe to be, criminal or fraudulent.[4]

 The shield of attorney-client privilege is stripped from a client who abuses the confidential relationship by using it to further a fraudulent or criminal scheme. *In re Grand Jury Proceedings,* 600 F.2d

215, *supra* at 218, *citing Hodge & Zweig, supra.* The crime or fraud exception applies even to situations where the attorney is not aware that his advice was sought in furtherance of some improper purpose. *Id.* John Doe's argument seems to suggest that his attorney was retained in order to facilitate the transfer of funds which the government is now investigating. John Doe's apparent advancement of the crime/fraud scenario only benefits the government. The government has the burden of establishing a *prima facie* case that the attorney was retained in order to promote intended or continuing criminal or fraudulent activity. *Id.* This Court is not persuaded that the government has met its burden. John Doe's awkward argument is likewise not persuasive when he has presented evidence *ex parte* that suggests to this Court that the transfer of funds was made for a legitimate purpose. To invoke the protection of *Baird v. Koerner, supra,* he must show that a strong probability exists that disclosure would implicate him in the criminal activity which caused him to seek legal advice. His own evidence about his reasons for transferring the funds defeats John Doe's argument. His reason for presenting this evidence was to establish that the services of his attorney were not exempted from the parameters of the attorney-client privilege by the ministerial function exception.

### 3) *Ministerial Function Exception*

 The attorney-client privilege protects only communications made for the purpose of obtaining legal advice. *In re Special Grand Jury, supra* at 1009; *Matter of Walsh, supra* at 494. Ministerial or clerical services are not within the privilege, *Bartone, supra* at 461, nor is business or other advice. *Walsh, supra* at 494. Testimony presented at the hearing convinces this Court that the services performed by Weiner for John Doe may fall within the bounds of both the ministerial,

---

**4.** This Court makes no determination regarding the nature of the fund transfer and its propriety

or impropriety.

unprotected functions and the privileged attorney-client functions. This Court finds that because the two may be so closely intertwined, no ready answer can be given as to those areas relative to which Weiner may properly be compelled to testify. Accordingly, Weiner must comply with the subpoena and appear, along with the requested documents. He may refuse to respond to certain questions or to produce certain portions of documents which he believes are protected by the attorney-client privilege. However, he must be prepared to establish with specificity which elements of the privilege he is invoking, and he may not raise issues which have already been disposed of by this Court. Therefore a Motion to Quash the subpoena is premature.

### D. Sixth Amendment

 John Doe's contention that enforcement of the subpoena will violate his Sixth Amendment right to counsel is without merit. The right to effective assistance of counsel does not attach until adversary judicial proceedings have been initiated against a defendant. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). For this reason, the Sixth Amendment does not apply to a grand jury investigation. *In re Special September 1978 Grand Jury (II),* 640 F.2d 49, 64 (7th Cir. 1980). *See also, In re Special Grand Jury No. 81–1, supra* at 1013 (Murnaghan, J., dissenting):

> ... The argument that the relationship with the client in and of itself is so tender that to require him to produce the subpoenaed materials would unduly risk dilution of the attorney-client privilege and of the right of an accused to have the assistance of counsel for his defense has a hollow ring.

Moreover, the attorney-client privilege involved here is an evidentiary privilege, not a constitutional one. *In re Grand Jury Proceedings (Gordon),* (N.D. Ohio March 15, 1983). The Sixth Circuit recognizes the wisdom of the rule that "evidentiary privileges in litigation are not fa-

vored." *In re Zuniga,* 714 F.2d 632, 637 (6th Cir.1983) quoting *Herbert v. Lando,* 441 U.S. 153, 176, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979).

Consequently, this Court finds that the Motion to Quash the subpoena is not well taken. Allowing Weiner to avoid appearing before the Grand Jury altogether would extend the attorney-client privilege far beyond its intended limits and purposes. *See, Matter of Walsh, supra* at 492. Weiner is ordered to comply with the subpoena. The Motion to Quash is denied.

IT IS SO ORDERED.