In re GRAND JURY PROCEEDINGS, JOHN DOE (ARNOLD WEINER, DOE'S ATTORNEY).

John DOE, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 84–3048.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 28, 1984.

Decided Jan. 28, 1985.

Nathaniel R. Jones, Circuit Judge, concurred and filed opinion.

Joshua R. Treem, argued, Schulman & Treem, P.A., Baltimore, Md., for petitioner.

David O. Bauer, Stephen Jigger, U.S. Dept. of Justice, Cleveland, Ohio, William C. Bryson, argued, Sp. Counsel, Organized Crime & Racketeering Section, U.S. Dept. of Justice, Washington, D.C., for respondent.

Before MARTIN, JONES and CONTIE, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

John Doe appeals from the district court's order compelling Doe's attorney to respond to a subpoena duces tecum issued by a federal grand jury meeting in Cleveland, Ohio. Doe contends that the matter sought by the subpoena is protected by the attorney-client privilege. We affirm the district court's order.

In February 1983, a special grand jury issued a subpoena to Arnold Weiner, Doe's attorney. The subpoena required Weiner to appear before the grand jury to testify and to produce the following documents:

All records relating to the wire transfer of $61,625.00 from Metro Facilities, Amsterdam on or about August 17, 1978 to Melnicove, Kaufman & Weiner, account # 06 99 882, First National Bank of Maryland, Baltimore (main branch). These records should include, but not be limited to, those relating to receipt, classification, and/or disbursement of said funds.

Before Weiner was scheduled to appear to testify, Doe filed a motion to intervene in the proceedings and to quash the subpoena that had been served on Weiner. The district court conducted *ex parte, in*

*camera* hearings at which both the government and Weiner made presentations regarding the subpoenaed materials.

Following the hearing, the court granted Doe's motion to intervene but denied the motion to quash the subpoena. *In re Grand Jury Proceedings (John Doe)*, 575 F.Supp. 197 (N.D.Ohio 1983). Doe contended in the district court that once a client invokes the attorney-client privilege, the government must meet the three-part test of *In re Grand Jury Proceedings (Schofield)*, 486 F.2d 85 (3d Cir.1973). *Schofield* requires the government to demonstrate by affidavit that: (1) the information sought is relevant to the investigation; (2) the investigation is within the jurisdiction of the grand jury; and (3) the information sought is not primarily for a purpose unrelated to the investigation. *Schofield*, 486 F.2d at 93. Although *Schofield* remains the law of the Third Circuit, other circuits have explicitly refused to adopt it. *See In re Osterhoudt*, 722 F.2d 591, 594 (9th Cir.1983) (per curiam); *In re Slaughter*, 694 F.2d 1258, 1260 (11th Cir.1982); *In re Pantojas*, 628 F.2d 701, 704–05 (1st Cir. 1980); *In re Walsh*, 623 F.2d 489, 493 (7th Cir.), *cert. denied*, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980); *In re Liberatore*, 574 F.2d 78, 83 (2d Cir.1978); *In re Grand Jury Proceedings (Guerrero)*, 567 F.2d 281, 283 (5th Cir.1978). Nevertheless, out of "an abundance of caution," the district court required the government to meet the *Schofield* requirements and found that they had, in fact, been met. *John Doe*, 575 F.Supp. at 200–01. The court then found that the subpoenaed material would be exempt from disclosure only if Doe could show that by answering particular questions or producing particular documents Weiner would reveal confidential communications with Doe or would implicate Doe in the very criminal activity that caused him to seek legal advice. *Id.* at 203–04. Because the propriety of non-disclosure of the materials could be determined only on the basis of particularized determinations, Weiner's blanket assertion of the attorney-client privilege and refusal

to appear before the grand jury were improper. *Id.* at 204.

Subsequent to the district court's decision, we decided *In re Grand Jury Subpoena 84–1–24# 1 (Battle)*, 748 F.2d 327 (6th Cir.1984). In *Battle* we refused to adopt the *Schofield* requirements. Instead, we held that the government need not make a showing that the information sought is minimally relevant to the grand jury investigation until the party who seeks to quash the subpoena makes a showing of irrelevancy or prosecutorial abuse. *Id.* at 330. Despite this holding, Doe argues that when a subpoena is directed to an attorney rather than a grand jury target, as in *Battle*, the government must demonstrate that the information sought could not be obtained from a source other than the attorney. We are not persuaded.

Doe cites three cases for the proposition that the government must demonstrate that the information sought is unavailable from sources other than an attorney when a client invokes the attorney-client privilege. Doe asserts that the court in *In re Grand Jury Proceedings (Fine)*, 641 F.2d 199 (5th Cir.1981), required the government to demonstrate that it had reached a "dead end" before subpoenaing the attorney. The reference to the "dead end," however, was in the court's recital of the facts and was not incorporated in the court's legal analysis. Subsequent cases in the Eleventh Circuit, for which *Fine* is a binding precedent, have not required the government to establish that it has reached a "dead end" and have, in fact, refused to impose even the more modest requirements of *Schofield*. *See In re Grand Jury Proceedings (Freeman)*, 708 F.2d 1571, 1575 (11th Cir.1983) (per curiam); *In re Grand Jury Proceedings (Bowe)*, 694 F.2d 1256, 1258 (11th Cir.1982); *In re Slaughter*, 694 F.2d 1258, 1260 (11th Cir.1982).

Doe also relies on *In re Osterhoudt*, 722 F.2d 591 (9th Cir.1983) (per curiam). In *Osterhoudt*, however, the court held that it need not determine whether the government must make a showing of "need" because the government had made such a

showing. *Id.* at 595. In any event, the court doubted whether such a showing was required. *Id.* at 594 n. 1. Other panels of the Ninth Circuit also have refused to require a showing of need in the context of a subpoena directed to an attorney. *See In re Grand Jury Proceeding (Schofield),* 721 F.2d 1221, 1222–23 (9th Cir.1983); *In re Grand Jury Proceedings (Hergenroeder),* 555 F.2d 686 (9th Cir.1977) (per curiam).

Finally, Doe cites our decision in *In re Grand Jury Subpoena Dated November 8, 1979,* 622 F.2d 933 (6th Cir.1980) (per curiam). That case, however, involved documents assertedly protected by the work product privilege. We held that the government had not demonstrated sufficient need to overcome the work product privilege. *Id.* at 936. Our inquiry into the government's need for the documents came *after* we had determined that the documents were privileged. Our analysis therefore provides no support for Doe's claim that the government must demonstrate need before Doe is required to demonstrate the existence of a privilege.[1]

Precedent does not support Doe's assertion that the government must make a showing of need in order to direct a subpoena to an attorney. Doe urges, however, that we should balance the interests protected by the attorney-client privilege and those implicated by the grand jury's quest for information. Doe asserts that when the government seeks records of a law firm the firm's bookkeeper or other representative may be subpoenaed. Subpoenaing an attorney, Doe argues, creates the risk that the attorney may unwittingly waive the client's privilege.

Doe's argument is not without merit, but it proves too much. The protection afforded by the attorney-client privilege is an exception to the general rule that the grand jury is entitled to every person's evidence. Were we to force an attorney to testify when a representative of the firm is available to testify, there is a risk that privileged information may be disclosed. If, on the other hand, we force the government to subpoena the firm's representative when the attorney is available to testify, there is a risk that non-privileged information may be withheld. We believe that current precedent is adequate to minimize the risks of too much and too little disclosure.

When Weiner is called to testify, he may, as the district court held, assert the attorney-client privilege with respect to any specific question that elicits privileged information. Weiner's formal right to assert the privilege, combined with informal incentives, such as loyalty to his client, adequately protect against improper disclosure. Additionally, if Weiner asserts the privilege the district court may order an *ex parte, in camera* inspection of the information sought. If contempt proceedings result, Doe may seek to intervene in order to protect his interest. Because the existing law is adequate to protect against improper disclosure of privileged information, we decline to create an additional impediment to the grand jury's search for relevant information.

Accordingly, the order of the district court is affirmed.

NATHANIEL R. JONES, Circuit Judge, concurring.

I agree that the district court's opinion should be affirmed, but for reasons different from those advanced by the majority.

In *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the appellants, taxpayers, sought to prevent their attorneys from complying with subpoenas, which compelled production of workpapers related to their (taxpayers) individual personal returns. The Supreme Court held that the taxpayers could preclude their attorneys' compelled production by relying upon a combination of their at-

---

**1.** Doe also cites *In re Special Grand Jury No. 81–1 (Harvey),* 676 F.2d 1005 (4th Cir.1982). The decision in *Harvey* was vacated by the Fourth Circuit sitting en banc. *See In re Special* *Grand Jury 81–1 (Harvey),* 697 F.2d 112 (4th Cir.1982) (en banc), *vacating In re Special Grand Jury No. 81–1 (Harvey),* 676 F.2d 1005 (4th Cir.1982).

torney-client privileges and their Fifth Amendment rights. The two-pronged, conjunctive test for that preclusion is as follows. First, the taxpayer had to show that the subpoenas were transferred from the taxpayers to the attorneys in order to obtain legal advice. *Id.* at 403–404, 96 S.Ct. at 1577–1578. Second, upon a positive showing, the taxpayers had to show that their Fifth Amendment rights against self-incrimination would have precluded their own compelled production. *Id.* at 404–405, 96 S.Ct. at 1577–1578. Because the taxpayers' Fifth Amendment rights would not have precluded the taxpayers' compelled production, the Supreme Court did not direct quashing the subpoenas. *Id.* at 414, 96 S.Ct. at 1582 (the papers held by the taxpayers' attorneys were not the taxpayers' private papers, but instead were the taxpayers' accountants' papers; therefore, the compelled production did not involve the taxpayers' testimonial incriminations).

Consequently, *Fisher* advises that if a subpoena duces tecum compels an attorney's production of documents and if, as in the instant case, that attorney's client raises, as a defense, his right against compelled self-incrimination in conjunction with his attorney-client privilege, then the client must satisfy the two-pronged test. Of course, the test assumes the existence of an attorney-client relationship and the client's possession of the documents prior to the transfer. *Id.* at 404–405, 96 S.Ct. at 1577–1578.

In the instant case Doe, as a client-intervenor, sought to raise his Fifth Amendment right against compelled self-incrimination in order to quash the subpoena that was served upon his attorney, Weiner. The district court, however, did not appear to recognize that because Doe raised his right against Weiner's production, Doe had to satisfy the test set forth by *Fisher*.[1] Consequently, the district court failed to

engage in any analysis that would have determined whether *Fisher's* test was satisfied.

Nevertheless and without realizing its special relevance, the district court made a helpful finding when it was stated "[h]ere, there is no evidence that the subpoenaed documents were ever in the hands of John Doe. It appears that they were not. At best, it seems plausible that identical sets of documents related to the wire transfer of funds were in the hands of both Doe and Weiner." 575 F.Supp. at 202. That finding conclusively demonstrates that Doe could not use his right against compelled self-incrimination to preclude Weiner's compelled production of the documents because he did not satisfy one of the two assumptions underlying the sequential analysis: client possession of the records prior to transfer. Consequently, I don't believe that under *Fisher*, Doe can successfully prevent Weiner's production.

This conclusion would not be affected by the district court's statement—"assuming that Joe Doe did transfer the subpoenaed documents, this Court finds that the Fifth Amendment does not proscribe their production by Weiner,"—because the analysis that supported that statement was dicta. *Id.* What is disturbing about that statement's supporting analysis is that it erroneously suggests that *Fisher* disallows the argument that compelled production constitutes impermissible self-authentication. *Id.* at 203. *Fisher*, as interpreted by the Supreme Court in *United States v. Doe*, —— U.S. ——, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), stands for the proposition that compelled production is equivalent to three testimonial admissions, one of which is the authentication of the holder's belief that those are the records described in the subpoena. This point, I believe, must be emphasized.

---

1. The only point upon which the instant case and *Fisher* are dissimilar is that in *Fisher* the documents were the appellants' accountants' workpapers while in the instant case the docu-

ments are unidentified as to creator but relate to a transfer of funds. That dissimilarity, however, does not affect the applicability of the test set forth by *Fisher*.